**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ARMUR REALTY, LLC, et. al., | : | |
| | : | |
| Plaintiffs, | : | **Civil Action No. 09-02792 (SRC)** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BANCO DO BRASIL, S.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on motion for summary judgment by Defendant Banco do Brasil, S.A. ("Banco") [docket entry 57] pursuant to Federal Rule of Civil Procedure 56(a). Banco also seeks to recover attorneys' fees. Plaintiffs have opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, the Court grants Banco's motion for summary judgment and grants Banco's motion for attorneys' fees.

### I.   BACKGROUND

On June 27, 2008, Armur Realty, LLC ("Armur") and Banco entered into a retail lease agreement for rentable space located at 158-160 Ferry Street, Newark, New Jersey ("Premises"). Under the lease, Armur was to construct the shell of the building, based on architectural plans

agreed upon by both Armur and Banco, for Banco's use as a tenant on the ground floor.

According to the lease, Armur was to deliver the Premises to Banco by December 1, 2008 ("Delivery Date").  Additionally, the lease provides that Banco would receive one free day of rent for every day Armur delayed delivery past the Delivery Date for a period of up to thirty days.  If Armur still did not deliver the Premises to Banco within thirty days of the Delivery Date, Banco would thereafter receive an additional two free days of rent for every one day of delay.  The lease also stipulates that Banco "shall have the right, starting on March 1, 2009 (the "Outside Delivery Date"), to terminate the lease and [Armur] and [Banco] shall have no further obligations to each other arising from th[e] lease."  (Lease Agreement ¶ 1.5, June 27, 2008.)

By letter dated April 15, 2009, Banco terminated the lease agreement.  Armur had not delivered the Premises to Banco by that time.  Thereafter, on June 8, 2009, Plaintiffs filed a Complaint, alleging Banco improperly ended the lease, resulting in a breach of contract.  Defendant Banco moves for summary judgment and for attorneys' fees.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at

trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### B.     Motion for Summary Judgment

Defendant Banco moves for summary judgment, contending that it properly exercised its right to terminate the lease as set forth by the plain, unambiguous terms of the agreement.  Banco argues that, because the Premises were not delivered by the Outside Delivery Date, it acted in accordance with the contract when it sent written notice of the lease cancellation on April 15, 2009.

New Jersey substantive law governs the question of contract interpretation in this matter. *See Mayfair Supermarkets, Inc. v. Acme Mkts., Inc.*, No. 87-3994, 1989 U.S. Dist. LEXIS 3466, at **18-19 (D.N.J. Apr. 3, 1969) ("New Jersey law construes lease agreements under the same guidelines employed to interpret contracts.")  In New Jersey, "[t]he construction of the terms of a written lease is a matter of law for the courts." *Barclays Bank P.C. v. 865 Centennial Ave. Assocs. Ltd. P'Ship,*, 26 F. Supp. 2d 712, 718 (D.N.J. 1998).  It is well-settled law that "where the terms of the contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." *In re Cendant Corp. Sec.*

4

*Litig.*, 569 F. Supp. 2d 440, 443 (D.N.J. 2008).  Indeed, "[t]he law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of another.  The judicial function of a court of law is to enforce the contract as it is written."  *Gahney v. State Farm Ins. Co.*, 56 F. Supp. 2d 491, 495 (D.N.J. 1999).

Banco's right to end the lease upon Armur's's failure to deliver the Premises by March 1, 2009, is set forth in the lease agreement in clear terms.  Specifically, Section 4.2 states: "*[i]f for any reason* the Delivery Date does not occur on or before the Outside Delivery Date, [Banco] may thereafter, at any time before the Delivery Date occurs, elect to terminate this Lease effective upon the giving of written notice to [Armur] and the parties shall have no further obligations to one another."  (Lease Agreement at ¶ 4.2.) (Emphasis added).  Armur expressly granted Banco an unconditional right to discontinue the lease if Armur failed to meets its delivery obligations.  Armur and Banco, both sophisticated parties, were represented by counsel of their choice during the negotiation and execution of the lease and included numerous provisions to induce Armur to deliver the Premises in a timely manner.  As of April 15, 2009, Armur had failed to deliver the Premises and Banco exercised the right to terminate that had been discussed and incorporated into the contract.

Plaintiffs do not dispute that Banco could end the lease if the Premises was not delivered by March 1, 2009; that the Premises was not delivered by April 15, 2009; and that Banco duly served a termination notice in the manner specified in the lease.  (Pls.' Opp'n Br. 2-3, Jan. 26, 2011.)  Instead, in their opposition, Plaintiffs allege that Banco should be precluded from terminating the contract because of: (1) Banco's bad faith conduct; (2) Armur's substantial performance of its contractual obligations; and (3) unforeseen circumstances that warrant an

extension of time for delivery.  However, none of these arguments succeed.

      1.   <u>Bad Faith</u>

Plaintiffs allege that Banco breached the implied covenant of good faith when it "caus[ed] delays by giving inconsistent plans," preventing Armur from being able to deliver the Premises by the promised date.  (Pls.' Opp'n Br. at 7.)  The parties do not dispute the facts relating to this claim.  Defendant simply contends that its actions do not support a breach of the covenant of good faith and fair dealing as a matter of law.

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000).  "The implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms." *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000).  The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* ("[t]he Restatement and the [New Jersey] cases note a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest.")  "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995).  So, where the terms of a contract are not specific, the implied covenant of good faith and fair dealing may fill in the gaps where necessary to give efficacy to the contract as written. *Fields v. Thompson Printing Co.*, 363 F.3d 259, 272 (3d Cir. 2004).  But where the terms of the parties' contract are clear, the implied

covenant of good faith and fair dealing will not override the contract's express language.  *Id*.

Plaintiffs contend that Banco's delay of construction substantially interfered with Armur's ability to perform its contractual obligations, thereby violating the implied covenant of good faith and fair dealing.  (Pls.' Opp'n Br. at 7.)  However, the express terms of the lease state that its termination is permissible if the Premises are not delivered "for any reason."  Armur explicitly granted Banco an unconditional right to end the lease if Armur failed to meets its delivery obligations.  We cannot read the implied covenant of good faith and fair dealing to essentially alter the express terms of the contract.  Because Armur did not include a proviso that would give it relief from delivery for architectural disputes, unforeseen mishaps, accidents or significant errors by Banco, we will not read that language into the lease.  Thus, Plaintiffs cannot assert this implied duty as a means of preventing Banco from exercising its clear right to terminate under the lease agreement.

### 2.   Substantial Performance

Plaintiffs additionally claim that Armur had substantially completed its work on the Premises by the March 1, 2009 deadline, foreclosing Banco from being able to terminate the contract.  (Pls.' Opp'n Br. at 9.)  While it is true that a party may be deemed to have substantially performed its contractual obligations, "even though he has failed in some minor particulars," Defendant has met its burden at summary judgment by pointing to the absence of evidence to support Plaintiffs' claim.  In response, Plaintiffs make conclusory statements that Armur substantially completed the construction work by March 1, 2009 but neglect to point to a scintilla of evidence to support their proposition.  Plaintiffs fail to point to anything in the record that would substantiate Armur's near-completion of the construction work or compliance with the

lease's delivery requirements.  *See R. Krevolin & Co., Inc. v. Brown*, 89 A.2d 255, 258 (N.J. Super. Ct. App. Div. 1952).  In contrast, in their opposition brief, Plaintiffs admit that the shell was not ready for delivery on March 16, 2009 but "could have been readied to be occupied within a reasonable time [thereafter]."  (Pls.' Opp'n Br. at 5.)  Accordingly, Plaintiffs' unsupported contention is insufficient to defeat a motion for summary judgment.

> 3.    Impossibility of Performance

Lastly, Plaintiffs contend that it was impossible for Armur to deliver the Premises by December 1, 2009 due to the unforeseen circumstances of "[a]sbestos contamination" and "[the] collapse of a wall of an adjacent building," justifying an extension of the delivery date.  (Pls.' Opp'n Br. at 5.)  There is no dispute about any material fact here.  The question before the Court is whether these facts support a claim for impossibility of performance as a matter of law.

New Jersey courts recognize the contract doctrine of impossibility of performance as a defense to breach of contract claims.  *Warren Distrib. Co. v. InBev USA LLC*, No. 07-1053, 2010 U.S. Dist. LEXIS 55542, at *20 (D.N.J. June 7, 2010); *Levesque v. Becton*, No. 08-632, 2009 U.S. Dist. LEXIS 7895, at *8-9 (D.N.J. Feb. 4, 2009) (citing 30 Richard A. Lord, Williston on Contracts § 77:6 (4th ed.)) ("[i]n a contract action, impossibility or impracticability of performing a contract should be raised as an affirmative defense in the first responsive pleading").  Impossibility of performance of a contract is "[t]he principle that a party may be released from a contract on the ground that uncontrollable circumstances have rendered performance impossible."  Black's Law Dictionary 772 (8th ed. 2004).  As such, even if the Court is to hold that it was impossible for Armur to deliver the Premises by the Outside Delivery Date, Plaintiffs would be released from the contract, not granted an extension of time to meet its

construction and delivery obligations.

Furthermore, impossibility of performance only offers relief from the performance of contractual obligations where: (1) the impossibility arises by operation of law; (2) a thing necessary to perform is destroyed; or (3) the contract calls for personal services, and the party to perform or receive performance dies. *J. Fitzpatrick & Co., Inc. v. Solna, Inc.*, No. 89-2668, 1990 U.S. Dist. LEXIS 17571, at *5-6 (D.N.J. Dec. 6, 1990); *Edwards v. Leopoldi*, 89 A.2d 264, 269 (N.J. Super. Ct. App. Div. 1952). Plaintiffs have failed to demonstrate the applicability of this doctrine to this case.

In addition, "this [C]ourt may not invoke the doctrine to provide relief against hardship arising from bad judgment, miscalculation or from a change in circumstances or the result of subsequent events, where these should have been in the contemplation of the parties as possible contingencies when they entered the contract." *J. Fitzpatrick*, 990 U.S. Dist. LEXIS 17571 at *6. In the lease agreement, Armur made an affirmative representation that the Premises was free from asbestos, that Armur would be responsible for any asbestos removal needed, and that Banco would be "harmless from and against any loss, cost, liability or damage relating to [asbestos] on or in the building." (Lease Agreement at ¶ 8(ix).) Therefore, Plaintiffs can not invoke the impossibility doctrine to provide relief where the presence of asbestos had clearly been contemplated by the parties and Armur assumed responsibility for its removal in the contract. Plaintiffs also allege that Armur was prevented from working on the Premises for approximately two months due to the collapse of a wall of an adjacent building. (Pls.' Compl.¶ 50, 57, June 8, 2009.) However, Plaintiffs fail to offer any argument or evidence as to how a mere eight-week construction delay made it impossible to deliver the Premises within the nineteen weeks past the

9

Delivery Date that it had remained undelivered.  As such, Plaintiffs cannot prevail on their impossibility of performance claim as a matter of law.

Therefore, Plaintiffs have failed to carry their summary judgment burden, as the nonmovant with the burden of proof at trial, of pointing to sufficient evidence for a jury to find in their favor at trial.  No issue as to any material fact precludes the entry of judgment as a matter of law.  As such, Defendant's motion for summary judgment will be granted.

### C.     Attorneys' Fees

Having found that Defendant is entitled to summary judgment, the Court will also grant Defendant's application for attorneys' fees.  Banco bases its application on the lease agreement which provides that: "[i]f either party brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, on trial or appeal, shall be entitled to his reasonable attorneys' fees to be paid by the losing party as fixed by the court."  (Lease Agreement at ¶ 24.10.)  Plaintiffs brought this action to declare their rights under the lease. Banco has proven, consistent with the foregoing discussion, that it adhered to the terms of the agreement and did not breach the contract.  Therefore, the Court will accept a supplemental submission from Defendant, in accordance with Local Civil Rule 54.2, supporting its application for fees.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment.  In addition, having determined that Defendant is entitled to an award of attorneys'

fees, the Court will accept an application for attorneys' fees, properly supported by documents

demonstrating fees incurred defending the suit.  An appropriate form of Order will be filed.


                                           s/Stanley R. Chesler
                                           STANLEY R. CHESLER
                                          United States District Judge

DATED: April 5, 2011